IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


DENGE LEMO GAHANO,                          05-CV-1946-BR

          Plaintiff,

                                            OPINION AND ORDER

v.


SUNDIAL MARINE & PAPER and
ALLIED INDUSTRIAL CHEMICAL
AND ENERGY WORKERS
INTERNATIONAL UNION 8-0369,

          Defendants.


DENGE LEMO GAHANO
12015 S.E. Ash Street
Portland, OR  97216

          Plaintiff, *Pro Se*


1 - OPINION AND ORDER

**CRAIG L. LEIS**
**EDWIN A. HARNDEN**
Barran Leibman LLP
601 S.W. Second Avenue
Suite 2300
Portland, OR 97204-3159
(503) 228-0500

       Attorneys for Defendant Sundial Marine & Paper

**STEVEN A. CRUMB**
Crumb & Munding PS
1950 Seafirst Financial Center
Spokane, WA 99201
(509) 624-6464

**JEFF S. NAPOLI**
Gilroy & Napoli, LLC
5335 SW Meadows Road
Suite 261
Lake Oswego, OR 97035
(503) 620-9887

       Attorneys for Defendant United Steel Workers
       International Union Local 8-0369, formerly known as
       Allied Industrial Chemical and Energy Workers
       International Union 8-0369


**BROWN, Judge.**

    This matter comes before the Court on the Motions for
Summary Judgment (#92) of Defendants United Steel Workers
International Union Local 8-0369 (Union) and Sundial Marine &
Paper (#98), Sundial's Motion to Strike Plaintiff's Declaration
(#134), and Plaintiff Denge Lemo Gahano's Motions to Strike the
Union and Sundial's Replies to their Motions for Summary Judgment
(#146, #149).

    For the reasons that follow, the Court **GRANTS** Defendants'

2 - OPINION AND ORDER

Motions for Summary Judgment, **GRANTS in part** and **DENIES in part** Sundial's Motion to Strike, and **DENIES** Plaintiff's Motions to Strike.


<u>**BACKGROUND**</u>

Sundial is a company that engages in the repair, dry docking, conversion, and construction of ships and vessels.  On April 14, 2004, Defendant Sundial hired Plaintiff as an apprentice welder at Sundial's facility in Troutdale, Oregon. Under a collective bargaining agreement (CBA) between Sundial and the Union, Plaintiff, like all new employees of Sundial, was hired as a probationary employee.  Under the terms of the CBA, probationary employees do not have seniority or the right to be recalled for employment after a lay-off.  The CBA also provides Sundial employees who complete probation after six months of active employment are entitled to additional rights under the CBA including seniority and the right to be recalled for employment after a lay-off.

On July 8, 2004, Sundial held a barbecue dinner for its employees.  At the barbecue, Plaintiff and a co-worker, Sam Castillo, had a brief verbal altercation in which Plaintiff contends Castillo called him an "African monkey nigger." Plaintiff immediately complained to his supervisor, Ty Mills, about the incident.  Mills asked Castillo about the incident.

3 - OPINION AND ORDER

Castillo reported Plaintiff called him a "fucking beaner," and Castillo responded by calling Plaintiff a "fucking Porch monkey." Mills concluded there was not enough evidence to corroborate either Plaintiff or Castillo's version of events, verbally reprimanded Castillo and Plaintiff, and determined there was no need for further action on the matter.  At his deposition, Plaintiff testified he did not experience harassment from Castillo or any other Sundial employee after the incident.

On July 30, 2004, Sundial laid off four probationary apprentice welders:  Plaintiff and three Caucasians.

On September 3, 2004, the Union sent Plaintiff a standard "welcome" letter.  On September 10, 2004, Plaintiff sent a letter to the Union in which he thanked it for his welcome letter and informed the Union that he had been "looking the way [*sic*] to contact this Union for past month and half [*sic*]."  Green Decl., Ex. B.  Plaintiff also informed the Union of his altercation with Castillo, stated his belief that Sundial terminated his employment in retaliation for reporting the incident, and requested the Union's assistance.

On September 13, 2004, Plaintiff called the Union and spoke with a staff representative, Karen Alexander, about his situation.  Alexander asked the Chief Steward, Steve Ballard, to conduct an investigation and requested Plaintiff's personnel file from Sundial.  Green Decl., Ex. C.

On September 30, 2004, Alexander wrote Plaintiff a letter in which she reported the results of the investigation. Alexander noted Sundial stated it terminated Plaintiff due to a general reduction in force, Plaintiff was a probationary employee at the time of his termination, Mills did not take the issue of the altercation any further because he was afraid both Plaintiff and Castillo would be terminated, and Plaintiff apparently did not take any action until he called the Union office on September 13, 2004. The Union concluded, based on these facts, that it could not take any further action on Plaintiff's behalf. Green Decl., Ex. C.

On July 6, 2005, Plaintiff submitted an application for re-employment with Sundial. Plaintiff testified at his deposition that he did not know whether Sundial had a position open at that time. Sundial rejected Plaintiff's application at some point because it did not have an apprentice-welder position open on July 6, 2005. In fact, Sundial did not hire any new apprentice welders in 2005. Sundial only recalled apprentice welders who had seniority when they were laid off as required by the CBA.

Plaintiff also wrote a second letter to the Union on July 6, 2005, in which he noted it had been "over 7 months since [his] last contact with [the Union]." Green Decl., Ex. D. Plaintiff asked the Union to "stand for [his] rights and get [his] job back." On July 22, 2005, the Union responded to Plaintiff in

5 - OPINION AND ORDER

writing and informed him again that "there is no action that can be taken on your behalf by the union.  At the time you were on probation, which, terminations [*sic*] are at the sole discretion of the employer, during the probationary period."  Green Decl., Ex. E.

On July 25, 2005, Plaintiff filed a complaint simultaneously with the Oregon Bureau of Labor and Industries (BOLI) and the Equal Employment Opportunity Commission (EEOC) against Sundial in which he alleged Sundial terminated his employment based on his race or national origin and/or because he complained about this discrimination to his supervisor.  Plaintiff also alleged Sundial refused to rehire him because he complained about race and/or national-origin discrimination.  On October 4, 2005, BOLI mailed Plaintiff a 90-day notice letter.  On November 7, 2005, the EEOC mailed Plaintiff a 90-day notice letter.

On December 28, 2005, Plaintiff filed *pro se* a Complaint in this Court against Sundial in which it appears Plaintiff alleged Sundial terminated his employment and did not rehire him because of his race or national origin or because he complained about discrimination.

On May 15, 2006, Plaintiff filed an Amended Complaint against Sundial in which he added the Union as a defendant and added allegations that he experienced harassment at Sundial, that Sundial terminated his employment on the basis of race, and that

6 - OPINION AND ORDER

Sundial would not rehire him due to his race and/or because he complained about discrimination.  Plaintiff also alleged he complained about harassment to the Union, and "it was clear that the union did not informed [*sic*] about my termination or complaining of racial discrimination by defendant."  Finally, Plaintiff asserted "[i]t is contrary to the public policy of the state [*sic*] of Oregon to discrimination or retaliate against an employee because of a complaint or otherwise asserted my right under law."

On June 12, 2006, the Court issued an Order directing Plaintiff to serve a Summons and a copy of the Complaint on the Union no later than August 16, 2006.  On August 8, 2006, and November 21, 2006, the Court extended Plaintiff's deadline to serve the Union until December 22, 2006.

On December 6, 2006, Plaintiff filed a Second Amended Complaint against Sundial and the Union in which he alleges the Union improperly refused to bargain with Sundial on Plaintiff's behalf.  On December 12, 2006, Plaintiff served his Second Amended Complaint on the Union.

On May 14, 2007, the Court issued an Order noting the First Amended Complaint was the operative complaint as to Sundial and the Second Amended Complaint was the operative complaint as to the Union for purposes of summary judgment.  On June 22, 2007, Plaintiff filed a Motion for Leave to File a Third Amended

Complaint to add a claim for defamation.

On June 25, 2007, the Union filed a Motion for Summary Judgment on the grounds that (1) Plaintiff's claim for breach of fair representation is barred by the applicable statute of limitations, (2) the Union did not breach its duty of fair representation, and (3) Plaintiff's claims are time-barred to the extent that Plaintiff asserts claims for violation of state and federal discrimination laws.  On June 25, 2007, Sundial also filed a Motion for Summary Judgment on the ground that Plaintiff cannot meet his burden with respect to any of his claims against Sundial.

On August 27, 2007, the Court issued an Opinion and Order in which it denied Plaintiff's Motion for Leave to File a Third Amended Complaint.

On September 18, 2007, Sundial filed a Motion to Strike Plaintiff's Declaration submitted in opposition to Sundial's Motion for Summary Judgment on the ground that it is "replete with hearsay, speculation, and statements made about which the declarant lacks personal knowledge."

On October 9 and 10, 2007, Plaintiff filed Motions to Strike the Replies of the Union and Sundial filed in support of their Motions for Summary Judgment.

**STANDARDS**

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id*. "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving

party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.

## SUNDIAL'S MOTION TO STRIKE

Sundial moves to strike 33 of the 38 paragraphs of Plaintiff's Declaration (#122) in Opposition to Sundial's Motion for Summary Judgment on the grounds of lack of personal knowledge, speculation, and hearsay. Sundial also moves to strike Plaintiff's Exhibits G2, M1-M2, and M7-M17 attached to the Declaration.

After carefully reviewing Plaintiff's Declaration at issue, the Court **GRANTS in part** Sundial's Motion to Strike as follows:

(1)  The Court strikes paragraphs 3, 15, 17, 25, 31, 33, and 36 on the grounds that Plaintiff lacks personal knowledge about the statements in these paragraphs and they are not

otherwise supported by the record;

(2)    The Court strikes paragraphs 10, 12-13, 21, 24, 35, and 37 in which Plaintiff asserts legal conclusions rather than facts;

(3)    The Court strikes paragraphs 19-20, 27, and 30 because they contain inadmissible hearsay and are not supported by the record; and

(4)    The Court strikes Exhibits M1-M2 and M7-M17 because Plaintiff failed to provide any foundation for these Exhibits and with respect to Exhibit G2 because it contains inadmissible hearsay.

The Court, however, **DENIES** Sundial's Motion to Strike with respect to paragraphs 4-5, 7-9, 14, 16, 18, 22-23, 26, 28-29, 32, and 38 because the allegations contained in these paragraphs are supported by the record.

## <u>PLAINTIFF'S MOTIONS TO STRIKE</u>

Plaintiff moves to strike the Replies of the Union and Sundial related to their respective Motions for Summary Judgment because, in effect, Plaintiff does not agree with Defendants' arguments or positions. Thus, Plaintiff's assertions in his Motions to Strike are in the nature of argument rather than objections to specific evidence.

Accordingly, the Court denies Plaintiff's Motions to Strike

11 - OPINION AND ORDER

Replies of the Union and Sundial.

## THE UNION'S MOTION FOR SUMMARY JUDGMENT

The Union moves for summary judgment on the grounds that
(1) Plaintiff's claim for breach of fair representation is barred
by the applicable statute of limitations, (2) the Union did not
breach its duty of fair representation, and (3) Plaintiff's
claims are time-barred to the extent Plaintiff asserts claims for
violation of state and federal discrimination laws.

**I.    Plaintiff's Claims against the Union for Breach of the Duty
of Fair Representation Are Barred by the Applicable Statute
of Limitations.**

Claims for breach of the duty of fair representation against
unions generally are subject to the six-month statute of
limitations found in § 10(b) of the National Labor Relations Act,
29 U.S.C. § 160(b). *Moore v. Local Union 569 of Intern. Broth.
of Elec.*, 989 F.2d 1534, 1541 (9th Cir. 1993) (citing *DelCostello
v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 171 (1983)).
*See also Wilkinson v. SEIU Local 1199NW*,    No. C06-469C, 2007 WL
43839, at *6 (W.D. Wash. Jan. 4, 2007) (applies six-month
limitations period to the plaintiff's breach of duty of fair
representation claim).

The six-month statute of limitations begins to run "'when
the employee discovers or in the exercise of reasonable diligence
should have discovered, the acts constituting the violation.'"

*Barnes v. Line Drivers Local Pickup and Delivery Local 81*, 232
F. Supp. 2d 1138, 1142 (D. Or. 2001)(quoting *Galindo v. Stoody
Co.*, 793 F.2d 1502, 1509 (9th Cir. 1986)).  When "the facts are
not in dispute, the date of accrual of a statute of limitations
is a question of law."  *Id.* (citing *Galindo,* 793 F.2d at 1508).

Here the Union informed Plaintiff in its September 30, 2004,
letter that it was not going to take any action to pursue
Plaintiff's grievance against Sundial.  Moreover, the Union
reiterated its position in its July 22, 2005, letter.  The Court,
therefore, concludes Plaintiff discovered or should have
discovered the Union was not going to take action as to his
grievance by July 22, 2005, at the latest.  Plaintiff, however,
did not include the Union as a defendant in this action until
May 15, 2006, which was more than six months after July 22, 2005.
Thus, Plaintiff did not bring this action against the Union
within the six-month statute-of-limitations period.

Accordingly, the Court concludes Plaintiff's claim against
the Union for breach of duty of fair representation is time-
barred and, therefore, grants the Union's Motion for Summary
Judgment as to this claim.

## II.  Plaintiff Did Not State Any Claims against the Union for Violations of State or Federal Discrimination Laws.

In his Second Amended Complaint, which is the operative
Complaint as to the Union, Plaintiff's pertinent allegations are
as follows:

13 - OPINION AND ORDER

Defendant intentionally violet my Equal Right
Under the Law by refusing bargaining with employer
behalf of my member ship of union.  Also defendant
changed his business name on 2005 before June
30,2006 in case this law suit against them.

Defendant terminate my membership with out any
notice due to my disclosing the intentionally
discrimination and wrongful termination.  To Them

Defendant has no proof to show that the
termination was because of poor performance or
attendance and violation of probation.  [T]here is
no proof written report on an satisfactory work or
conduct in my record.

Defendant refused bargaining in good faith,
because of my racial complaint against employer.
During the investigation of the Union the employer
did not provide or disclose any witness to protect
the allegation beside the use of probation for
discrimination excuses.

Its contrary to the public policy of the state of
Oregon to discriminate against employee because
they have complained hostile work environments of
discrimination.  Defendant engaged in aforesaid
conduct for refuse bargaining according to
contract and the conduct toward me in violation of
this fundamental public policy.

Second Am. Compl. ¶¶ 18-21, 25.  The Court concludes Plaintiff's

claims against the Union relate solely to the Union's duty to

represent Plaintiff fairly in the grievance process.  Even

interpreting Plaintiff's claims in the broadest manner, the Court

concludes they do not constitute claims for direct violation of

federal or state discrimination laws.

Even if Plaintiff adequately alleged claims against the

Union for violation of federal or state discrimination laws, the

Court concludes Plaintiff's claims would be time-barred.

14 - OPINION AND ORDER

Title VII contains two time limitations within which a
plaintiff must file an administrative charge with the EEOC:
(1) within 180 days of the last act of discrimination or
(2) within 300 days from the last act of discrimination if a
plaintiff first commenced proceedings with a "[s]tate or local
agency with authority to grant or seek relief from such
practice." 42 U.S.C. § 2000e-5(e)(1). As noted, the Union
informed Plaintiff in writing on September 30, 2004, that it
would not take any further action as to Plaintiff's complaints of
discrimination. Plaintiff did not file any complaint with BOLI
or the EEOC alleging discrimination by the Union. Plaintiff,
however, did not include the Union in this action until May 15,
2006, which is more than 300 days after the Union declined to
take any further action as to Plaintiff's allegations of
discrimination. Accordingly, to the extent Plaintiff claims the
Union discriminated against him in violation of Title VII, that
claim is untimely.

To the extent Plaintiff claims the Union discriminated
against him in violation of Oregon Revised Statutes § 659A.030,
Oregon Revised Statutes § 659A.875 requires:

> (1) a civil action . . . alleging an unlawful
> employment practice must be commenced within one
> year after the occurrence of the unlawful
> employment practice unless a complaint has been
> timely filed [with BOLI] under ORS 659A.820.
>
> (2) A person who has filed a complaint under ORS
> 659A.820 must commence a civil action . . . within

90 days after a 90-day notice is mailed to the complainant.

As noted, Plaintiff did not file a complaint with BOLI as to alleged discrimination by the Union nor did Plaintiff bring the Union into this action within one year of the Union's refusal to take further action on Plaintiff's behalf.  Accordingly, the Court concludes Plaintiff's claim that the Union discriminated against him in violation of § 659A.030 is untimely.

To the extent Plaintiff may be attempting to allege a claim against the Union for wrongful discharge in violation of public policy, the Court notes an employer may discharge an employee at any time for any reason under Oregon law unless doing so violates a contractual, statutory, or constitutional requirement.  *Patton v. J.C. Penney Co.*, 301 Or. 117, 120 (1986).  The tort of wrongful discharge is a narrow exception to this general rule. *Sheets v. Knight*, 308 Or. 220, 230-31 (1989).  Wrongful discharge, however, applies only to actions taken by an employer in terminating an employee.  Plaintiff was not an employee of the Union.  Accordingly, Plaintiff cannot allege a wrongful-discharge claim against the Union.

For these reasons, the Court grants the Union's Motion for Summary Judgment as to these claims.

## SUNDIAL'S MOTION FOR SUMMARY JUDGMENT

Sundial moves for summary judgment on the grounds that

16 - OPINION AND ORDER

Plaintiff has not proffered any evidence sufficient to create triable issues as to his claims against Sundial for hostile work environment, race discrimination, and retaliation.

Although Plaintiff does not specify whether he brings his hostile work environment, discrimination, and retaliation claims under Title VII, 42 U.S.C.2000e, or Oregon Revised Statutes § 659A.030, the standard for establishing a *prima facie* case of these kinds of claims under § 659A.030 and Title VII is identical. *See Henderson v. Jantzen, Inc.*, 79 Or. App. 654, 658 (1986). The Court, therefore, analyzes Plaintiff's hostile work environment, discrimination, and retaliation claims simultaneously.

**I.   Plaintiff's Hostile Work Environment Claim.**

Plaintiff contends his encounter with Castillo created a hostile work environment. Sundial, however, correctly notes a single racial epithet uttered by a co-worker is not sufficient to create a hostile work environment under Title VII, 42 U.S.C. § 2000e, or Oregon Revised Statutes § 659A.030 as a matter of law.

To establish a *prima facie* case of hostile work environment based on race under both Title VII and § 659A.030, a plaintiff must establish (1) he was "subjected to verbal or physical conduct" because of his race, (2) "the conduct was unwelcome," and (3) "the conduct was sufficiently severe or pervasive to

alter the conditions of [the plaintiff's] employment and create
an abusive work environment." *Manatt v. Bank of Am., NA,* 339
F.3d 792, 798 (9th Cir. 2003)(quoting *Kang v. U. Lim Am., Inc.*,
296 F.3d 810, 817 (9th Cir. 2002)).

The Supreme Court has concluded a hostile work environment
exists when the workplace is permeated with discriminatory
intimidation, ridicule, and insult. *Faragher v. Boca Raton*, 524
U.S. 775, 786 (1998).  Title VII and § 659A.030 do not constitute
a "general civility code." *Manatt*, 339 F.3d at 798 (quoting
*Faragher*, 524 U.S. at 788).  "[S]imple teasing, offhand comments,
and isolated incidents (unless extremely serious) will not amount
to discriminatory changes in the 'terms and conditions of
employment.'" *Id*. (internal citation omitted).  *See also Jordan
v. Clark*, 847 F.2d 1368, 1374-75 (9th Cir. 1988)(court held no
hostile work environment when "off-color" jokes were told in
workplace).

To support his claim for hostile work environment, Plaintiff
cites a single incident of a racial epithet by a co-worker at a
barbeque dinner.  Although Castillo's comment was insensitive and
inappropriate, it does not rise to the level of creating a
hostile work environment because it was isolated and, in any
event, not so severe or pervasive as to alter the conditions of
Plaintiff's employment.  *See, e.g., Vasquez v. County of Los
Angeles*, 307 F.3d 884, 893 (9th Cir. 2002)(no hostile work

environment when the employee was told he had "a typical Hispanic macho attitude," he should work in the field because "Hispanics do good in the field," and he was yelled at in front of others); *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1111 (9th Cir. 2000)(no hostile work environment when a supervisor referred to females as "castrating bitches," "Madonnas," or "Regina" in front of the plaintiff on several occasions and directly called the plaintiff "Medea"). *Compare Nichols v. Azteca Rest. Enters.*, 256 F.3d 864, 872-73 (9th Cir. 2001)(a hostile work environment existed when a male employee was called "faggot" and "fucking female whore" by co-workers and supervisors at least once a week and often several times per day); *Anderson v. Reno*, 190 F.3d 930 (9th Cir. 1999)(a hostile work environment existed when a supervisor repeatedly referred to the employee as "office sex goddess," "sexy," and "the good little girl"; when he humiliated the employee in public by drawing a pair of breasts on an easel while the employee was making a presentation and then told the assembled group that "this is your training bra session"; and when the employee received vulgar notes and was patted on the buttocks and told she was "putting on weight down there"), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *Draper v. Coeur Rochester*, 147 F.3d 1104, 1109 (9th Cir. 1998)(hostile work environment existed when the plaintiff's supervisor made repeated sexual remarks to her,

19 - OPINION AND ORDER

told her about his sexual fantasies and desire to have sex with her, commented on her physical characteristics, and asked over a loudspeaker whether she needed help changing her clothes).

Based on this record, the Court grants Sundial's Motion for Summary Judgment as to Plaintiff's hostile work environment claim.

## II.  Plaintiff's Discrimination Claims.

Plaintiff contends Sundial terminated his employment and refused to re-hire him because of his race.  Sundial, however, asserts it terminated Plaintiff's employment due to lack of work for new apprentice welders in July 2005.  In addition, Sundial contends it did not re-hire Plaintiff because in 2005 it only re-hired apprentice welders with seniority as required under the CBA.

### A.  Termination.

#### 1.  Standards

Under Title VII it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race. . . ."  42 U.S.C. § 2000e-2(a)(1).  A person suffers disparate treatment in his employment "'when he or she is singled out and treated less favorably than others similarly situated on account of race.'" *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th

20 - OPINION AND ORDER

Cir. 2006)(quoting *Jauregui v. City of Glendale*, 852 F.2d 1128,

1134 (9th Cir. 1988)).  To establish a *prima facie* case of

discrimination in employment under Title VII or § 659A.030,

> a plaintiff must offer proof [that]:
> (1) . . . the plaintiff belongs to a class of
> persons protected by Title VII; (2). . . the
> plaintiff performed his or her job satis-
> factorily; (3) . . . the plaintiff suffered
> an adverse employment action; and (4) . . .
> the plaintiff's employer treated the plain-
> tiff differently than a similarly situated
> employee who does not belong to the same
> protected class as the plaintiff.

*Id*. (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802

(1973)).

When a plaintiff establishes a *prima facie* case of

discrimination, it creates a presumption "that the plaintiff's

employer undertook the challenged employment action because of

the plaintiff's race."  *Id*.  To rebut the presumption, the

defendant "must produce admissible evidence showing that the

defendant undertook the challenged employment action for a

'legitimate, nondiscriminatory reason.'"  *Id*. (quoting *McDonnell

Douglas*, 411 U.S. at 802)).  If the defendant produces that

evidence, "the presumption of discrimination drops out of the

picture and the plaintiff may defeat summary judgment by

satisfying the usual standard of proof required in civil cases

under Fed. R. Civ. P. 56(c)."  *Id*. (quotation omitted).

> In the context of employment discrimination
> law under Title VII, summary judgment is not
> appropriate if, based on the evidence in the

21 - OPINION AND ORDER

> record, a reasonable jury could conclude by a
> preponderance of the evidence that the
> defendant undertook the challenged employment
> action because of the plaintiff's race.

*Id.* (citing *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th
Cir. 1994).

To meet the standard of proof required by Rule
56(c), a plaintiff may offer direct or circumstantial evidence
"'that a discriminatory reason more likely motivated the
employer' to make the challenged employment decision." *Id.*
(quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248,
256 (1981)). Alternatively, a plaintiff may offer evidence "that
the employer's proffered explanation is unworthy of credence."
*Id.* (quotation omitted). In other words, a plaintiff may defeat
a defendant's motion for summary judgment "by offering proof that
the employer's legitimate, nondiscriminatory reason is actually a
pretext for racial discrimination." *Id.* (citations omitted)

A plaintiff, however, "may not defeat a
defendant's motion for summary judgment merely by denying the
credibility of the defendant's proffered reason for the
challenged employment action." *Id.* at 1028 n.6 (citing *Wallis*,
26 F.3d at 890, and *Schuler v. Chronicle Broad. Co.*, 793 F.2d
1010, 1011 (9th Cir. 1986)). In addition, a plaintiff cannot
establish a genuine issue of material fact exists "by relying
solely on the plaintiff's subjective belief that the challenged
employment action was unnecessary or unwarranted." *Id.* (citing

22 - OPINION AND ORDER

*Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996)(concludes despite the plaintiff's claims that she had performed her job well, "an employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact").

    **2.  Analysis**

As noted, Plaintiff contends Sundial terminated his employment because of his race.  Sundial does not dispute Plaintiff is African American, a class protected under Title VII; that Plaintiff performed his job in a satisfactory manner; or that it terminated Plaintiff's employment.  Sundial, however, contends Plaintiff has not proffered any evidence that it treated him differently than it treated similarly situated employees who are not African American.

Plaintiff relies on his altercation with Castillo and Mills's alleged failure to discipline Castillo adequately for the altercation to support his contention that he was terminated because of his race.  Nonetheless, Plaintiff has not identified any non-African American apprentice welders without seniority who were treated differently than Plaintiff.  As noted, the record reflects Sundial laid off three Caucasian apprentice welders without seniority on the same day that it laid off Plaintiff. Plaintiff's subjective belief that he was terminated on the basis of race is not sufficient standing alone to establish a *prima*

23 - OPINION AND ORDER

*facie* case of discrimination.

Even if Plaintiff had established a *prima facie* case of discrimination, however, Sundial has offered evidence of a legitimate, nondiscriminatory reason for terminating Plaintiff: lack of work. In addition to the fact that Sundial laid off three Caucasian apprentice welders without seniority on the same day that it laid off Plaintiff, Sundial offers the Declaration of Stuart Baird, Sundial's yard superintendent in 2004 who was responsible for layoffs when Sundial's work levels fluctuated. Baird testified Sundial's work level fluctuated in July 2004 to the extent that Sundial did not have sufficient work for the number of apprentice-level welders it was employing.

Plaintiff does not offer any substantial or specific evidence to rebut Sundial's proffered legitimate, non-discriminatory reason for terminating his employment. Although Plaintiff disputes Sundial's proffered reason for terminating him, Plaintiff relies solely on his subjective belief that his termination was unnecessary and unwarranted. As noted, however, Plaintiff's subjective belief is insufficient to defeat Sundial's Motion for Summary Judgment.

Accordingly, the Court grants Sundial's Motion for Summary Judgment as to these claims.

**B.    Failure to Re-Employ.**

Plaintiff contends Sundial did not re-employ him

because of his race.  Sundial, however, contends it did not treat
Plaintiff differently than it treated similarly situated
employees who are not African American.

### 1.   Standards

To establish a *prima facie* case of discrimination
under Title VII or § 659A.030 as to re-employment, a plaintiff
must offer evidence:

> (I) that [the plaintiff] belongs to a racial
> minority; (ii) that he applied and was
> qualified for a job for which the employer
> was seeking applicants; (iii) that, despite
> his qualifications, he was rejected; and
> (iv) that, after his rejection, the position
> remained open and the employer continued to
> seek applicants from persons of complainant's
> qualifications.

*Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1145 n.2 (9th
Cir. 2006)(citation omitted).

### 2.   Analysis

Plaintiff has not established he applied for a job
for which Sundial was seeking applicants.  Although Plaintiff
submitted an application for employment with Sundial in July
2005, Plaintiff admits in his deposition that he did not do so in
response to any advertisement or publication requesting
applications.  Leis Decl., Ex. C at 13.  Plaintiff testified he
submitted his application because he "wait[ed] to be called and I
didn't be called [*sic*].  And I went down there to apply.  And no,
they didn't hire me.  That's all I know."  Leis Decl., Ex. C at

25 - OPINION AND ORDER

13.  Plaintiff further testified the person who accepted his application did not indicate there were any openings.  Leis Decl., Ex. C at 13.  Moreover, Sundial has offered evidence that it was not seeking new apprentice welders at that time and that it did not hire any new apprentice welders in 2005.  Instead Sundial re-employed apprentice welders with seniority as required under the CBA, and Plaintiff did not have seniority.

The Court, therefore, concludes on this record that Plaintiff has not established a *prima facie* case of discrimination as to his re-employment.  Accordingly, the Court grants Sundial's Motion for Summary Judgment with respect to Plaintiff's claims for discrimination under Title VII and § 659A.030 on the basis of failure to rehire.

## III. Plaintiff's Retaliation Claims.

Plaintiff contends Sundial terminated his employment and did not re-hire him in retaliation for his complaints of discrimination.

### A.    Standards

To establish a *prima facie* case of retaliation under Title VII and § 659A.030, a plaintiff must show

> (1) he engaged in a protected activity,
> (2) the defendant subjected the plaintiff to
> an adverse employment action, and (3) a
> causal link exists between the protected
> activity and the adverse action.

*Manatt*, 339 F.3d at 800 (quotation omitted).  *See also Harris v.*

26 - OPINION AND ORDER

*Pameco Corp.*, 170 Or. App. 164, 178-79 (2000)("A plaintiff seeking to establish a *prima facie* case of retaliation under ORS 659A.030(1)(f) must establish the same elements as are required under Title VII.").  Complaining about race discrimination to a supervisor is a protected activity.  *Id*. at 800 n.8.

If a plaintiff has established a *prima facie* retaliation claim, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *Id*. (citation omitted).  If the defendant then "articulates such a reason, [the plaintiff] bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive."  *Id*. (quotation omitted).

**B.   Termination**.

For purposes of its Motion for Summary Judgment, Sundial agrees Plaintiff engaged in a protected activity when he complained to Mills about his altercation with Castillo.  Sundial also agrees it subjected Plaintiff to an adverse employment action; *i.e.,* termination.  Sundial, however, contends there is not a causal link between Plaintiff's complaints and his termination.

The Court notes generally that the temporal proximity of a plaintiff's termination to his complaints may be sufficient to establish a *prima facie* case of discrimination.  *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)(citing *O'Neal*

27 - OPINION AND ORDER

v. Fergueson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001).

See also Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir.

1997)(three-month period insufficient); Hughes v. Derwinski,

967 F.2d 1168, 1174-75 (7th Cir. 2001)(four-month period

insufficient)).  Here, however, Sundial asserts there was not a

causal link between Plaintiff's complaints and his termination

even though they occurred close together because as Baird, who

made the decision to terminate Plaintiff's employment, testified

in his Declaration, he was unaware of Plaintiff's complaints to

Mills at the time Baird made his decision.  Plaintiff, in fact,

does not contend he informed Baird of his complaints prior to his

termination.

        The Ninth Circuit has recently held

                if a subordinate, in response to a
                plaintiff's protected activity, sets in
                motion a proceeding by an independent
                decisionmaker that leads to an adverse
                employment action, the subordinate's bias is
                imputed to the employer if the plaintiff can
                prove that the allegedly independent adverse
                employment decision was not actually
                independent because the biased subordinate
                influenced or was involved in the decision or
                decisionmaking process.

Poland v. Chertoff, 494 F.3d 1174, 1182 (9th Cir. 2007).  Here

Plaintiff has not established Mills set into motion any

proceeding that led to Plaintiff's termination or that Mills

influenced or was involved in the decision to terminate

Plaintiff's employment.

28 - OPINION AND ORDER

Even if the temporal proximity of Plaintiff's termination to his complaints was sufficient to establish a *prima facie* case of retaliation, Sundial has provided a legitimate, nondiscriminatory reason for terminating Plaintiff; *i.e.*, a reduction in force due to lack of work.  Plaintiff does not offer any evidence that rebuts Sundial's legitimate, nondiscriminatory reason, and Plaintiff's subjective belief that his termination was unnecessary or unwarranted is not sufficient to overcome Sundial's legitimate, nondiscriminatory reason for Plaintiff's termination.

Accordingly, the Court grants Sundial's Motion for Summary Judgment as to Plaintiff's claims that he was terminated in retaliation for reporting discrimination.

**C.   Failure to Re-Employ.**

Plaintiff contends Sundial refused to re-hire him after his termination in retaliation for complaining about discrimination to Mills and for filing a BOLI complaint. Sundial, however, contends Plaintiff's BOLI complaint could not have been the basis for Sundial's failure to re-employ Plaintiff because it rejected Plaintiff's application for re-employment on July 6, 2005, and Plaintiff did not file a BOLI complaint until July 25, 2005, or 19 days after Sundial contends it rejected Plaintiff's application.  The record, however, does not reflect Sundial rejected Plaintiff's application for re-employment on

29 - OPINION AND ORDER

July 6, 2005.  Even though Don Nugent, General Manager of
Sundial, testifies in his Declaration that Plaintiff's
"application was rejected," he does not pinpoint the timing of
that rejection.  Although Plaintiff alleged he applied for a
position with Sundial and that Sundial "has not provided me with
work," in his BOLI complaint, he also fails to provide a date for
Sundial's rejection of his application for re-employment.  The
record, therefore, does not conclusively resolve Sundial's
contention that it rejected Plaintiff's application before
Plaintiff filed a BOLI complaint.

Even though Plaintiff testified at his deposition that
the person to whom he presented his application did not tell him
there were not any positions open at that time, Sundial has
offered evidence to establish it did not hire any new apprentice
welders in 2005.  Sundial only re-employed apprentice welders who
had seniority as required under the CBA, and, as noted, Plaintiff
did not have seniority when his employment was terminated.  *See*
Leis Decl., Ex. C at 13.  Thus, Sundial's statement that it did
not have any positions open for new apprentice welders in 2005
is an unrefuted and legitimate, nondiscriminatory reason for not
re-employing Plaintiff.

In summary, Plaintiff has not produced any evidence
that Sundial's stated reason for not re-employing him is mere
pretext.  The Court, therefore, grants Sundial's Motion for

30 - OPINION AND ORDER

Summary Judgment as to Plaintiff's claims that Sundial failed to re-employ Plaintiff in retaliation for his complaints of discrimination in violation of Title VII and § 659A.030.

**IV.  Plaintiff's Wrongful-Discharge Claim.**

In his Second Amended Complaint, Plaintiff contends "[i]t is contrary to the public policy of the state of Oregon [*sic*] to discriminate or retaliate against an employee because of a complaint or otherwise asserted . . . right under law."  The Court construes this allegation to be one for wrongful discharge because of Plaintiff's race or in retaliation for complaining about discrimination.

**A.    Wrongful Discharge Under Oregon Common Law Generally**

Under Oregon law, an employer may discharge an employee at any time for any reason unless doing so violates a contractual, statutory, or constitutional requirement.  *Patton v. J.C.D. Penney Co.*, 301 Or. 117, 120 (1986).  The tort of wrongful discharge is a narrow exception to this general rule.  *Sheets v. Knight*, 308 Or. 220, 230-31 (1989).  Moreover, the tort of wrongful discharge is not available in Oregon if an existing remedy adequately protects the public interest in question. *Draper v. Astoria Sch. Dist. No. 1C*, 995 F. Supp. 1122, 1130-31 (D. Or. 1998).  "The underlying purpose of that tort in this state is not to vindicate individual interests of the employee by assuring that he or she receives the maximum possible recovery,

31 - OPINION AND ORDER

but rather to protect important public policies by punishing conduct that thwarts those interests." *Id.* at 1130. In other words, the tort was never intended to be a tort of general application but rather an interstitial tort to provide a remedy when the conduct in question was unacceptable and no other remedy was available. *Id.* Thus, the court in *Draper* concluded a claim for common-law wrongful discharge is not available in Oregon if (1) an existing remedy adequately protects the public interest in question or (2) the legislature has intentionally abrogated the common-law remedies by establishing an exclusive remedy regardless whether the courts perceive that remedy to be adequate. *Id.* at 1130-31.

When determining whether a plaintiff may proceed on a claim of wrongful discharge under state common law at the same time that he pursues claims of retaliation and discrimination under Title VII and/or Oregon Revised Statutes § 659A.030 based on the same facts, "the question is not whether the remedy [under Title VII and/or § 659A.030] is 'the best possible remedy' or 'identical to the tort remedy' but merely whether it is sufficient to 'adequately protect the employment related right.'" *Id.* at 1134 (quoting *Carlson v. Crater Lake Lumber Co.*, 103 Or. App. 190, 193 (1990)).

32 - OPINION AND ORDER

**B.    Plaintiff May Not Proceed on His Claim for Common-Law Wrongful Discharge at the Same Time that He Pursues Claims for Retaliation under Title VII and § 659A.030(1)(f).**

In *Holien v. Sears, Roebuck and Co.*, the Oregon Supreme Court held the plaintiff could bring her wrongful-discharge claim under state common law because Title VII and Oregon Revised Statutes § 659.121[1] were not adequate remedies in a sexual-harassment retaliation case.  298 Or. 76, 98 (1984).  In *Holien*, the court found Title VII and § 659.121, provided insufficient remedies "to capture the personal nature of the injury done" to the plaintiff and failed "to appreciate the relevant dimensions of the problem."  *Id.*  The court concluded available remedies of reinstatement, back pay, and injunction could not adequately compensate a plaintiff.  *Id.* at 1303-04.

After *Holien*, the Oregon Court of Appeals in *Carlson v. Crater Lake Lumber Co.* held claims by three members of a family who were discharged after a fourth family member resisted sexual harassment did not fall under the wrongful-discharge exception.  103 Or. App. 190, 196 (1990), *modified on other grounds by* 105 Or. App. 314 (1991).  The court, consistent with the analysis in *Holien*, found the remedy for such a discharge was adequate under existing Oregon statutes and the potential injuries inflicted

---

[1] Oregon Revised Statutes Chapter 659 is the precursor to Oregon Revised Statutes § 659A under which Plaintiff brings his Oregon statutory claims in this case.

were not "the kind of 'personal injury' that *Holien* described."
*Id.*  The Oregon Court of Appeals, therefore, found the trial
court did not err when it granted summary judgment to the
defendant as to the plaintiffs' wrongful-discharge claims.  *Id.*

The Ninth Circuit relied on *Carlson* in *Thomas v. City
of Beaverton*, 379 F.3d 802 (9th Cir. 2004).  In *Thomas*, the
plaintiff alleged she was discharged in retaliation for opposing
her employer's discriminatory practices based on race in the form
of refusal to promote another employee.  The plaintiff brought
retaliation claims against her employer based on violations of
Title VII and Oregon Revised Statutes § 659A.030 in addition to a
claim of wrongful discharge under Oregon common law.  *Id.* at 807.
The district court granted summary judgment to the defendant.
The Ninth Circuit affirmed the district court's grant of summary
judgment to the defendant as to the plaintiff's wrongful-
discharge claim under state common law.

> Even assuming that the City discharged [the
> plaintiff] in retaliation for her opposition
> to retaliation against Perry, [the plaintiff]
> did not suffer the kind of personal injury
> that would warrant providing a common law
> remedy of wrongful discharge in addition to
> the existing state and federal statutory
> remedies for retaliation.

*Id*. at 813 (citing *Carlson*, 103 Or. App. at 196).[2]  The Ninth

---

[2] The Court notes the Ninth Circuit declined to review the
district court's grant of summary judgment as to the plaintiff's
claim under Or. Rev. Stat. § 659A.030 because the plaintiff
failed to make a specific, distinct argument or to establish the

34 - OPINION AND ORDER

Circuit concluded the plaintiff could not bring a retaliation claim based on common-law wrongful discharge because her injuries did not require further remedy and the existing state and federal statutory remedies for retaliation were adequate.

Thus, *Thomas* stands for the proposition that a common-law wrongful-discharge claim based on retaliation is not available in Oregon when adequate remedies exist under Title VII or § 659A.030.  Other decisions in this district are consistent with *Thomas*.  *See, e.g., Speed v. Adidas Am., Inc.*, No. 04-CV-1430-PK, 2006 WL 897978, at *13 (D. Or. Apr. 6, 2006)(an employee's wrongful-discharge claim was not available because "under *Draper*, an existing remedy exists that adequately protects the public interest; *i.e.*, the remedies provided under the FMLA/OFLA and Title VII."); *Rice v. Comtek Mfg. of Or., Inc.*, 766 F. Supp. 1544, 1546 (D. Or. 1990)(the plaintiff did not have an "action for wrongful discharge at common law" because § 659.030(1)(f), provided the plaintiff with an adequate remedy).

The Court notes some decisions in this district have relied on a more recent Ninth Circuit case, *Cornwell v. Electra Central Credit Union*, 439 F.3d 1018 (9th Cir. 2006), to support the proposition that a common-law wrongful-discharge claim is available in tandem with state and federal retaliation claims.

---

elements of the statutory claim even though, as the court noted, the plaintiff probably had stated a claim under the statute.  *Id.* at 812 n.5.

*See, e.g., Williams v. Home Depot U.S.A., Inc.*, No. 04-CV-1377-ST, 2006 WL 1005076, at *7 (D. Or. Apr. 13, 2006); *Cox v. Vanport Paving, Inc.*, No. 05-CV-527-HU, 2006 WL 1582302, at *5 (D. Or. June 2, 2006). *Cornwell*, however, did not alter *Thomas*. In *Cornwell*, the district court granted summary judgment to the defendants as to the plaintiff's retaliation claims brought under Title VII and § 659A.030 on the ground that the plaintiff did not establish a genuine issue of material fact existed "as to whether the true reason for his demotion or termination was race discrimination or that the [defendant's] stated reasons were false." *Id.* at 1031. The district court also granted summary judgment as to the plaintiff's common-law wrongful-discharge claim on the ground that the plaintiff did not establish a genuine issue of material fact existed as to whether he "was terminated because he resisted discrimination." *Id.* at 1035. The Ninth Circuit affirmed the district court's decision to grant summary judgment to the defendant as to the plaintiff's retaliation and wrongful-discharge claims. The Ninth Circuit noted a statutory retaliation claim and a common-law wrongful-discharge claim require "a similar showing" of facts. *Id.* at 1035. The court, however, did not reach the issue whether a wrongful-discharge claim would have been available to the plaintiff if his wrongful-discharge, state retaliation, and federal retaliation claims had survived summary judgment. Thus,

36 - OPINION AND ORDER

*Thomas* still controls in the absence of an Oregon Supreme Court decision giving the necessary guidance.

The Court notes in decisions in this district that did not follow the *Thomas* analysis, other remedies were viewed as inadequate.  For example, in some cases the Court found Title VII, 42 U.S.C. § 1981a(a)-(b), was not an adequate remedy because it caps compensatory and punitive damages.  In some cases the Court found Or. Rev. Stat. § 659A.030(1)(f) was not an adequate remedy because it limits recovery to economic damages.  As the Court in *Draper* concluded, however, "the question [whether a wrongful-discharge claim is available] is not whether the existing remedy is 'the best possible remedy' or 'identical to the tort remedy' but merely whether it is sufficient to 'adequately protect the employment related right.'"  *Id.* at 1134 (quoting *Carlson*, 103 Or. App. at 193).  Moreover, "[d]istrict courts are, of course, bound to the law of their own circuit." *Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir. 1987).

Accordingly, this Court, following *Thomas,* concludes Plaintiff's wrongful-discharge claim is not available because Title VII and § 659A.030(1)(f) provide adequate remedies for his retaliation claims.

37 - OPINION AND ORDER

### C. Plaintiff May Not Proceed on His Claim for Common-Law Wrongful Discharge at the Same Time that He Pursues Claims for Discrimination under Title VII and § 659A.030.

Plaintiff also contends he was wrongfully terminated because of his race. Plaintiff's allegations, however, do not support such a claim because the narrow Oregon common-law wrongful-discharge exception is applicable to a claim of retaliation based on complaints about discrimination, but not to a claim of wrongful discharge as an act of discrimination based on race. *See, e.g., Messer v. Portland Adventist Med. Ct.*, 707 F. Supp. 449, 454 (D. Or. 1989)("[A]lthough plaintiff may be correct that it is offensive to public policy to allow an employer to fire an employee because of her race, national origin or religion," such an act does not satisfy the elements of a common-law wrongful-discharge claim.); *Goodlette v. LTM, Inc.*, 128 Or. App. 62, 64-65 (1994)("In the first case [of discharges that violate the statutory right against discrimination], there is no common-law right of action, but in the second case [discharges resulting from resistance to discrimination] there can be."). Thus, the Court concludes a wrongful-discharge claim arising from discrimination based on race is not available under state common law.

Accordingly, the Court grants Sundial's Motion for Summary Judgment as to Plaintiff's claim for wrongful discharge.

## CONCLUSION

For these reasons, the Court **GRANTS** the Motions for Summary Judgment (#92) of Defendants United Steel Workers International Union Local 8-0369 and Sundial Marine & Paper (#98), **GRANTS In part** and **DENIES in part** Sundial's Motion to Strike Plaintiff's Declaration (#134), and **DENIES** Plaintiff's Motions to Strike the Union and Sundial's Replies to their Motions for Summary Judgment (#146, #149).

IT IS SO ORDERED.

DATED this 14th day of December, 2007.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge